UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEIJER, INC.,

Plaintiff,

v.

HUDSON INSURANCE COMPANY,

Defendant.

Case No. 1:26-cv-1634

Hon. Hala Y. Jarbou

______________________________/

**OPINION**

Plaintiff Meijer, Inc., brings this declaratory judgment action against Defendant Hudson Insurance Company to clarify Hudson's obligations under an insurance contract. The dispute concerns Hudson's duty to cover Meijer's litigation costs incurred in a prior lawsuit filed under the Employee Retirement Income Security Act (ERISA), *see Donelson v. Meijer, Inc.*, No. 1:25-cv-1156 (W.D. Mich. Aug. 6, 2025). Meijer's insurance policy with Hudson covers ERISA-related litigation costs, but Hudson argues that the *Donelson* litigation falls under a provision of the policy that reduces Hudson's exposure for lawsuits alleging excessive fees for ERISA plan participants. Meijer filed this lawsuit to obtain a declaratory judgment that *Donelson* is not covered by the excessive fee provision. The parties have both moved for summary judgment. For the reasons below, the Court will grant Meijer's motion for summary judgment (ECF No. 20) and deny Hudson's motion for summary judgment (ECF No. 14).

**I. BACKGROUND**

Meijer is a company that operates grocery stores across the United States. Meijer also manages two employee 401(k) retirement plans that are subject to ERISA. Hudson issued Meijer an insurance policy effective March 1, 2025, that provides coverage for expenses incurred by Meijer in ERISA-related litigation. (Policy, ECF No. 14-3.) Most insurance claims under the

policy are subject to a retention of $100,000 per claim. (*Id.*, PageID.108.) A retention, like a deductible, determines how much of the loss the insured is responsible for: Meijer covers the first $100,000 of loss per claim and Hudson covers the rest, up to the policy's liability limits. However, the policy sets a $1 million retention for a specific subset of claims, referred to as "Excessive Fee Litigation Claims." (*Id.*, PageID.125 (emphasis removed).) An excessive fee litigation claim

> means any allegation or Claim based upon, arising from, in consequence of or in any way related, directly or indirectly, in part or in whole, to:
>
> a. excessive or unreasonable administrative, investment, provider or recordkeeping fees, expenses, payments or compensation with respect to a Plan, including but not limited to revenue sharing fees, investment management fees, investment consulting fees or financial engine fees;
>
> b. the failure to monitor or the selection or performance of any Plan investments, including but not limited to said performance when considered net of any such fees, expenses, compensation or payment;
>
> c. an Insured's receipt of such fees, expenses, payments or compensation.

(*Id.* (emphasis removed).)

On August 6, 2025, a group of plaintiffs filed a lawsuit against Meijer entitled *Donelson v. Meijer, Inc.*, No. 1:25-cv-1156 (W.D. Mich. Aug. 6, 2025); it was initially filed in Wisconsin but was subsequently transferred to this Court. The plaintiffs sought relief under ERISA for Meijer's alleged mismanagement of its 401(k) plans. The Court summarized the allegations in the following way:

> At issue in this case are two 401(k) retirement plans the company provides to its employees, one for union workers and one for non-union workers. For simplicity, the Court will refer to these collectively as a single "plan." The plan's assets are held in a trust fund administered by Meijer. Meijer makes a base contribution to the plan and matches 50% of employee contributions up to a specified limit. However, an employee must work at Meijer for five years in order to receive the full matching contributions they have earned. If an employee leaves before the five-year mark, some of the funds that were intended to be their matching contributions are instead "forfeited" to the general trust. This case turns on how Meijer has used those forfeited funds.

> The plan in operation during the relevant time permitted Meijer to use the forfeited funds for two things. First, Meijer could "pay reasonable administrative expenses of the Plan." If the forfeitures were not used to pay administrative expenses, those expenses would instead be paid from participants' accounts. Second, Meijer could use the forfeitures "to reduce Employer contributions" to the plans. In other words, if Meijer committed to pay a certain amount in base contributions and matching funds, the forfeitures could be used to cover some of those costs and decrease Meijer's payment obligation.
>
> Between August 2019 and January 2025, Meijer used the forfeitures solely to reduce employer contributions. In January 2025, Meijer amended the plans to require that forfeitures be used first to reduce employer contributions, and then (if forfeited funds remain) to pay administrative expenses. Plaintiffs allege that from 2019 to 2025, when Meijer had the option to use the forfeited funds to pay administrative expenses, the failure to do so violated ERISA. Furthermore, at the end of each year from 2019 to 2024, there were unused forfeited funds remaining in the trust account. Plaintiffs allege that Meijer's failure to timely use these forfeitures also violated ERISA.

*Donelson v. Meijer, Inc.*, 826 F. Supp. 3d 898, 900 (W.D. Mich. 2025) (citations omitted).

The Court ultimately granted Meijer's motion to dismiss the complaint in *Donelson*, although the plaintiffs' appeal of that decision is pending. Meijer's insurance policy requires Hudson to cover its litigation expenses for *Donelson*. However, Hudson maintains that *Donelson* was excessive fee litigation, so Meijer's claim is subject to a $1 million retention rather than a $100,000 retention. Meijer seeks a declaratory judgment that *Donelson* is subject to a $100,000 retention.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288–89 (1961)). Summary

judgment is not an opportunity for the Court to resolve factual disputes. *Id.* The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

"[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, 115 F.4th 480, 488 (6th Cir. 2024) (alteration in original) (quoting *Pineda v. Hamilton County*, 977 F.3d 483, 491 (6th Cir. 2020)). "[W]hen the moving party bears the burden of proof [at trial], their initial summary judgment burden is higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* (cleaned up). When the moving party does not bear the burden of proof at trial, they may meet their initial burden at summary judgment by "submitting affirmative evidence that negates an essential element of the nonmoving party's claim," *Kava v. Peters*, 450 F. App'x 470, 473 (6th Cir. 2011) (cleaned up), or by "pointing out the lack of evidence to support an essential element" of that claim, *Rockwood Auto Parts, Inc. v. Monroe County*, 155 F.4th 557, 566 (6th Cir. 2025) (cleaned up). The nonmovant must then present "sufficient evidence from which a jury could reasonably find in [their] favor." *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1230 (6th Cir. 2025) (cleaned up).

## III. ANALYSIS

This case boils down to a simple question: did the *Donelson* litigation involve an excessive fee claim? Hudson argues that it did. The *Donelson* plaintiffs claimed that Meijer's use of forfeitures caused plan participants to pay higher administrative fees. In Hudson's view, this allegation is "related, directly or indirectly, in part or in whole, to . . . excessive or unreasonable administrative . . . fees . . . with respect to a Plan." (Policy, PageID.125.) "Unless otherwise

defined, contractual language is given its plain and ordinary meaning." *Cole v. Auto-Owners Ins. Co.*, 723 N.W.2d 922, 924 (Mich. Ct. App. 2006).[1] As Hudson points out, "[t]he ordinary meaning of the phrase 'relating to' is broad." *Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1199 (10th Cir. 2009); *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (defining "relate to" as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with" (quoting Black's Law Dictionary 1158 (5th ed. 1979))). And the contract further expands the scope of "related to" by specifying that the relation to administrative fees may be only indirect or partial. Under Hudson's reading, any ERISA claim that touches on administrative fees, however tangentially, falls under the contractual definition of an excessive fee claim.

Meijer contends to the contrary that the phrase "excessive fee litigation claim" is a legal term of art referring to a specific subset of ERISA claims. As Meijer notes, "the rules of contract interpretation . . . recognize that 'technical terms and words of art are given their technical meaning when used in a transaction within their technical field.'" *Ramco Hartland LLC v. Landmark/Mansour Dev. LLC*, No. 294877, 2011 WL 445816, at *3 (Mich. Ct. App. Feb. 8, 2011), *remanded in part on other grounds*, 803 N.W.2d 885, 885 (Mich. 2011). In the ERISA context, an excessive fee claim is usually one in which a plaintiff asserts that a plan's fees are unreasonably high given the services provided. *See, e.g.*, *Hughes v. Nw. Univ.*, 63 F.4th 615, 625 (7th Cir. 2023) ("Plan fiduciaries have a continuing duty to monitor their expenses to make sure that they are not excessive with respect to the services received."); *England v. DENSO Int'l Am. Inc.*, 136 F.4th 632, 637 (6th Cir. 2025) ("[A] plaintiff must allege that the fees were excessive relative to the services rendered or establish other factors relevant to determining whether a fee is excessive under

[1] The parties agree that Michigan law applies to interpretation of the insurance policy.

the circumstances." (quotation marks omitted)); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148 (10th Cir. 2023) ("[T]here is no doubt a claim for breach of ERISA's duty of prudence can be based on allegations that the fees associated with the defined-contribution plan are too high compared to available, cheaper options.").[2] In other words, an excessive fee claim usually focuses on the unreasonableness of the fees themselves—not the unreasonableness of some other action (like management of forfeitures) that in turn affects the fees. Meijer contends that the *Donelson* plaintiffs did not directly challenge the reasonableness of the fees, and the relief they sought would not have reduced the fees—rather, it would have required Meijer to *offset* some of the fees with the forfeitures. Indeed, the *Donelson* plaintiffs specifically acknowledged that their "case is not about . . . the reasonableness of administrative fees." (*Donelson* Pls.' Br. 2, ECF No. 21-2.) Because the *Donelson* claim does not fit the standard profile of an excessive fee ERISA claim, Meijer argues, it does not fall under the contractual provision for "excessive fee litigation claims."

As an initial matter, Hudson objects that it is irrelevant whether "excessive fee litigation claim" usually refers to a specific subset of ERISA claims because the term is defined in the policy itself and that definition supersedes the term's standard meaning.[3] This objection, though well-taken, is not decisive for two reasons. First, even when a term is explicitly defined, the standard meaning of the term may inform the Court's interpretation of the definition. *Cf. Bond v. United States*, 572 U.S. 844, 861 (2014) ("In settling on a fair reading of a statute, it is not unusual to consider the ordinary meaning of a defined term, particularly when there is dissonance between that ordinary meaning and the reach of the definition."). Second—and more importantly—

[2] As the case law indicates, an excessive fee claim can concern various kinds of fees, including administrative or recordkeeping fees associated with management of the plan (the type of fees at issue in *Donelson*) or fees associated with the investment vehicle itself. The distinction is not relevant for purposes of this case.

[3] Hudson also correctly notes that "excessive fee litigation claim" does not appear in the case law; the proper term would be merely "excessive fee claim."

Meijer's argument applies equally to the phrase "excessive or unreasonable administrative . . . fees," which appears in the definition of "excessive fee litigation claim." The policy does not define "excessive or unreasonable administrative fees," and if this phrase encompasses only inherently unreasonable fees—not fees rendered unreasonable by a plan fiduciary's use of forfeitures—then Meijer's reading of the provision prevails.

"Any ambiguities in insurance contracts are liberally construed in favor of the insured and against the insurer, who drafted the contract." *Morinelli v. Provident Life & Acc. Ins. Co.*, 617 N.W.2d 777, 781 (Mich. Ct. App. 2000). And the Court agrees with Meijer that the phrase "excessive or unreasonable administrative fees" is at least ambiguous. Using the natural meaning of "excessive" and "unreasonable," it is awkward to describe the *Donelson* plaintiffs' claims as relating to excessive or unreasonable fees. The fees standing alone were not alleged to be excessive or unreasonable; if the forfeitures had not existed, the plaintiffs would have had no issue with the fees themselves. The fact that Meijer should have (in the plaintiffs' view) used the forfeitures to reduce the fees does not render the fees excessive or unreasonable. By way of analogy, suppose that a grocery store arbitrarily rejects a customer's attempt to use a coupon. The store has acted unreasonably, and the person must pay higher prices as a result. But it would be odd to say that the store's prices are excessive or unreasonable as a result of the rejected coupon. The prices are perfectly unobjectionable; it is rather the lost opportunity to pay a reduced price that is unfair. In the same way, the *Donelson* plaintiffs had no quarrel with the administrative fees; their objection was to the lost opportunity to pay discounted fees due to Meijer's use of forfeitures. The absence of an expected or deserved discount to one's administrative fees does not render those fees excessive or unreasonable.

This understanding of "excessive or unreasonable" is bolstered by the fact that these terms commonly appear in ERISA cases to refer to fees that are too high relative to the services provided, which was not alleged in *Donelson*. It makes sense that, in specifying its liability, Hudson would write different contractual provisions for different types of common ERISA claims. One can imagine many potential reasons why excessive fee claims might warrant a higher retention, based on (for example) the frequency of those claims, the length and expense of litigating them, or the insured's ability to guard against them. It is understandable, in other words, that an insurer would provide different coverage depending on the challenged conduct at issue in the litigation. But it is difficult to see why any insurer would adjust its coverage depending on whether the underlying conduct of the insured, whatever it might be, has a downstream impact on the fees paid by plan participants. Under Meijer's reading, the provision circumscribes a particular set of claims that share relevant features and will likely be litigated in similar ways; under Hudson's reading, the provision applies to a disparate set of claims without much of a unifying principle or underlying logical relation. Meijer's reading is more plausible.

It is true that the policy provision is worded broadly, such that it applies to claims "in any way related, directly or indirectly, in part or in whole, to . . . excessive or unreasonable administrative . . . fees." But the breadth of the "related to" provision cannot expand the provision's scope beyond the limits of the phrase "excessive or unreasonable administrative fees." That is, if a fee that a plan participant wishes to be offset by other funds is not, by definition, "excessive or unreasonable," then it does not matter how broadly one construes "related to"—the *Donelson* claim is in no way related to "excessive or unreasonable fees."

In sum, the natural meaning of "excessive or unreasonable fees," combined with the common usage of these terms in ERISA litigation, creates significant ambiguity as to whether the

claims in *Donelson*—which were targeting Meijer's management of forfeited funds, not its setting of fees—fall under the "excessive fee litigation claim" provision of the policy. And because ambiguous insurance contracts are construed in favor of the insured—here, Meijer—the Court finds that the provision in question does not cover the *Donelson* litigation, and the policy's lower retention applies.[4]

The relief that Meijer seeks—a declaratory judgment—is discretionary, and the Court determines whether it is appropriate by considering the *Grand Trunk* factors, see *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Court looks to

> (1) Whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for res judicata;
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; . . . and . . .
>
> (5) whether there is an alternative remedy which is better or more effective.

*W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (quotation marks omitted). Here, the factors counsel in favor of entering a declaratory judgment. A declaration would settle the controversy and clarify the legal relations between the parties without creating friction with state courts. Further, there is no evidence of procedural fencing, and no better alternative remedy is apparent. Thus, a declaratory judgment is warranted.

---

[4] The Court finds it unnecessary to determine whether a provision setting a specific retention for certain claims qualifies as a "limitation" provision and triggers the rule that "an insurer seeking to defeat a claim because of an exception or limitation in the policy has the burden of proving that the loss . . . comes within the purview of the exception or limitation set up." *Morrill v. Gallagher*, 122 N.W.2d 687, 691 (Mich. 1963). The result would be the same regardless of whether Hudson bears this additional burden.

## IV. CONCLUSION

For the reasons explained above, the Court will grant Meijer's motion for summary judgment and deny Hudson's motion for summary judgment. An order and judgment will enter in accordance with his Opinion.

Dated: November 16, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE